IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF
PANOLA COUNTY, MISSISSIPPI

| | |
|---|---|
| ROBERT PRIDE, EFFIE D. PRIDE, ETHELDRA D. HAYNIE, WILLIAM E. BAILEY, BRANDON A. MAYO, THOMAS A. MILLS, JOHNNY MOORE, GARY NANNEY, ROYCE SPEARS, AND HUDSON WILLIAMS | PLAINTIFFS |
| VS. | CAUSE NO. CV2002-349B/2 |
| MEGA LIFE AND HEALTH INSURANCE COMPANY, NASE GROUP INSURANCE TRUST, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED aka NASE CHAD MILLS, ROBERT WESLEY PITTMAN, BARRY LEE, AND JOHN DOES 1-20 | DEFENDANTS |

3-04CV-7420

RECEIVED
APR - 8

## COMPLAINT

(JURY TRIAL REQUESTED)

**COME NOW** Plaintiffs, Robert Pride, Effie D. Pride, Etheldra D. Haynie, William E. Bailey, Brandon A. Mayo, Thomas A. Mills, Johnny Moore, Gary Nanney, Royce Spears, and Hudson Williams, by and through their attorneys, and bring this civil complaint against Defendants, Mega Life and Health Insurance Company (hereinafter "Mega Life"), NASE Group Insurance Trust (hereinafter "NASE Group") and National Association for the Self Employed a/k/a NASE (hereinafter "NASE") and Chad Mills, Robert Wesley Pittman, and Barry Lee (hereinafter "Agents"), and John Does 1-20, and in support of the same would show the following:

I.

### INTRODUCTION

1. The Plaintiffs are, or at the time of the sale giving rise to this cause of action were, adult resident citizens of the State of Mississippi. The Defendant Mega Life is an insurance company licensed to do business, and actually doing business, in the State of Mississippi. The

Complaint  Page 1

FILED
DEC 31 2002
W. JOE REID
CIRCUIT CLERK

9

Plaintiffs were sold what was represented to be a health insurance policy in the State of Mississippi, Panola County, by the Defendant Mega Life through Defendants' agents, Barry Lee, Chad Mills and Robert Wesley Pittman, pursuant to a scheme of deceptive sales practices developed by, supported by, and conducted with the knowledge of and to the benefit of the Defendants Mega Life, NASE Group and NASE.

2. Mega Life, NASE Group and NASE are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance Company as a marketing tool and profit center. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates which Mega Life contends can be altered, modified or cancelled by an "agreement" between Mega Life and NASE Group. Consumers are deceived by this arrangement into believing that NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly owned and controlled and the only insurance made available to NASE members are Mega Life products.

3. John Does 1-20 are insurance agents who may have aided to some degree in the sale or deceptive practices and fraud that alleged herein, but whose identity and addresses are unknown at this time, therefore, upon complete identification and location the complaint will be amended to add the specific agents.

## PARTIES

4.      Plaintiffs are, or at the time of the transaction complained of were, adult resident citizens of the State of Mississippi. Plaintiffs Effie D. Pride and Robert Pride are adult resident citizens of the Second Judicial District of Panola County, Mississippi, living on Curtis Road in Batesville, Mississippi. Plaintiff, Etheldra D. Haynie, is also an adult resident citizen of the Second Judicial District of Panola County, Mississippi, residing at 2349 Macedonia Road, Batesville, Mississippi 38606.

5.      Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma. At all times alleged herein, Mega Life was registered to do and actually doing business in the state of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is as follows:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

5.      Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance.

6.      The Defendant NASE Group Insurance Trust is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi and the complaint will be amended when the information can be ascertained.

7.      Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. At all times alleged herein,

NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is as follows:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

8. Defendant, Barry Lee, is an adult resident citizen of Yalobusha County, Mississippi and may be served with process at 186 County Road 371, Water Valley, Mississippi 38965.

9. Defendant, Chad Mills, is an adult resident citizen of Pontotoc County, Mississippi and may be served with process at his principal place of employment with Wal-Mart Distribution Center, 973 State Highway 30 West, New Albany, Mississippi 38652.

10. Defendant, Robert Wesley Pittman, is an adult resident citizen of DeSoto County, Mississippi and may be served with process at his residence address of 5996 South Bend Lane, Olive Branch, Mississippi 38654-3227.

## JURISDICTION AND VENUE

11. Defendants include a foreign insurance company and other corporate entities doing business in the State of Mississippi and adult resident citizens of the State of Mississippi. Many of the Plaintiffs reside in the Second Judicial District of Panola County, Mississippi and some or all of the tortious actions which give rise to this Complaint occurred and/or accrued in Panola County, Mississippi. This Court has jurisdiction over this matter and the parties herein and Panola County is the proper venue for this cause of action pursuant to Mississippi Code Annotated § 11-11-3; 11-11-7 and 11-11-11, and Rule 82 of the Mississippi Rules of Civil Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

## NO FEDERAL JURISDICTION

12. Each claim for relief stated in this Complaint is based exclusively on state law and no federal causes of action are alleged. Plaintiffs unequivocally stipulate that no claim is being made or will be made pursuant to any federal law. Plaintiffs are making specific factual nonclusory allegations directed at the individual Defendants. The individual Defendants are the persons who made initial contact with Plaintiffs on behalf of the Defendants, verbally stated the misrepresentations alleged below, and is not the employee of any corporate Defendants. Defendants are adult resident citizens of the State of Mississippi and is alleged in this Complaint to have had personal knowledge that the representations which Defendants made to Plaintiffs were not true and that Defendants intended thereby to deceive the Plaintiffs into purchasing the insurance and association memberships sold by Mega Life and NASE and that Defendants personally profited from making the misrepresentations by reason of receiving a commission on the sale of the insurance and association membership to Plaintiffs. If the factual allegations made in this Complaint against Defendants are found by the trier of fact to be true, Plaintiffs will be entitled under the laws of Mississippi to recover a judgment personally and individually against each Defendant for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to Federal court by the Defendants will be improper.

## RELATIONSHIP OF THE PARTIES

13. The agent Defendants are sales agents for Mega Life/NASE. These Defendants represented to Plaintiffs that NASE was an independent, not for profit association of the self employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates". These Defendants further intentionally concealed from Plaintiffs many material facts including but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for approximately $2.00 per month per member but NASE collects $15 or more per month from each member for these benefits; and, 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes his right to be informed of association meetings and to vote on matters affecting the association's operations.

14. Mega Life Insurance Company is solely or principally owned by Ron Jensen who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without

obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable (in most states) to individually underwritten health insurance; and, 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements" by which the insurance company removes all the profit from the association. These "management agreements" give the insurance company (or a "management company" controlled by the insurance company) complete control over the association's accounts. The association's typically generate millions of dollars in profits monthly and this money is funneled to the insurance company and its owners under the terms of the "management agreements". Consumers, such as Plaintiffs, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham arrangements, such as the one organized by the Defendants, every effort is made to insure the association "members" never have access to accurate information which would reveal the true nature of the arrangement.

15. NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy". This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in connection with the "group insurance policy". In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

16. NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association". NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

17. Plaintiffs purchased the Mega Life policy based upon the misrepresentations made by the agent Defendants and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiffs which:

    a. Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

    b. Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

    c. Failed to disclose the cost of the association "benefits" and implied those benefits were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d.  Failed to disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life;

e.  Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated form the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

## STATEMENT OF FACTS AND CAUSES OF ACTION

18. The facts stated above are incorporated herein.

19. The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the associations "group buying power".

In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

20. The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials and on its internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

21. Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association. On this same page, there is a link to "NASE's endorsement standards" and upon clicking that link a page appears which list several purported "criteria" for endorsement of insurance. Again, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members". From the home page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed". Another link captioned "full listing of benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you. Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates". It then states that "because of the different products available in each state across

Complaint                                                                                                           Page 10

the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage".

22. This statement is made so that the web page does not conspicuously link to Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants' advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants written marketing materials provided to Plaintiffs create the same mis-impressions and deceptions. Defendant's brochure and outline of coverage fail to disclose the Defendant's relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiffs act upon the representations in the manner reasonably contemplated which was by purchasing association membership and insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

23. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power". However, at the time of the sale, all Defendants knew that the premiums were artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that Mega Life intended to engage in a scheduled

series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral" so that any insureds with health problems would be isolated and eventually eliminated from the insured population.

24.   All misrepresentations complained of were made by the Defendants knowingly and intentionally specifically for the purpose of inducing Plaintiffs to purchase the association membership and the health insurance policy. Such conduct constitutes intentional fraud.

25.   Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs were unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiffs' damages were proximately caused by the false representations and their reliance thereon.

26.   Defendants made material misrepresentations to the Plaintiffs with the willful intent of inducing the Plaintiffs to purchase and to maintain a policy of health insurance and association membership through Mega Life and NASE. Plaintiffs relied upon the Defendants misrepresentations in making the decision to purchase the insurance and association membership and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiffs as described above and such conduct constitutes suppression/concealment and/or failure to disclose.

## DAMAGES

27. The conduct of the Defendants as described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to the recovery of punitive damages.

28. Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiffs which is implied in the contracts between those Defendants and Plaintiffs.

29. As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs have suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiffs. Among the damages suffered by Plaintiffs are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiffs.

30. All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to commit a fraud upon Plaintiffs as above described. Each corporate Defendant is a separate entity and the individual Defendant is not employed by any of the corporate entities.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand trial by jury and a judgment of and from the Defendants, jointly and severally, in an amount to be determined by the jury in this matter for the Plaintiffs' actual damages and punitive damages assessed against the Defendants


together with all costs of court, prejudgment interest, and interest at the highest lawful rate from and after the date of judgment.

Respectfully submitted,

GREER, PIPKIN & RUSSELL
P.O. Box 907
117 N. Broadway Street
Tupelo, MS 38802-0907
Telephone: (662) 842-5345
Telecopier: (662) 842-6870

By: _____
MICHAEL D. GREER
MS Bar No.: 5002

ATTORNEY FOR PLAINTIFFS